UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:25-cv-55-LLK

MICHAEL C.[1]                                                                    PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                 DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the

Final Decision of the Commissioner denying his claims for Disability Income (DIB) and

Supplemental Security Income (SSI) Benefits under Titles II and XVI of the Social Security Act.

[DN 1].[2] Plaintiff's Fact and Law Summary is at DN 10, the Commissioner's Fact and Law

Summary is at DN 12, and Plaintiff's Reply is at DN 13. The parties have consented to the

jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any

subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit.

[DN 8]. The matter is now ripe for determination.

After examining the administrative record, the ALJ's Decision, the arguments of the parties,

and the applicable authorities, the Court is of the opinion that the ALJ's Decision is supported by

substantial evidence and will accordingly AFFIRM the Commissioner's Final Decision and

DISMISS Plaintiff's Complaint.

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

I. PROCEDURAL HISTORY

**Administrative History**. Plaintiff filed applications for DIB and SSI on September 22, 2022, alleging disability from September 20, 2020, at age 35 from COPD, lumbar back degeneration, and low educational functioning. [DN 7] at 287. His claims were denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The hearing was conducted on October 26, 2023, in person, with attorney M. Gail Wilson attending on Plaintiff's behalf. Hearing Transcript, [DN 7] at 46. Also attending and testifying during the hearing was impartial vocational expert Jackie Rogers. *Id*. On February 23, 2024, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled. ALJ Decision, [DN 7] at 22-38.

Plaintiff requested review of the ALJ's Decision by the Appeals Council. On March 3, 2025, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision. [DN 7] at 6-11. At that point, the ALJ's Decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). Thus, this Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered the decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claims for DIB and SSI benefits was based upon the five-step sequential evaluation process which applies in all Social Security disability cases. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2026, and that he has not engaged in substantial gainful activity since September 25, 2020, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with lumbago, sciatica and radiculopathy; chronic

2

obstructive pulmonary disease (COPD); Takotsubo cardiomyopathy/nonischemic cardiomyopathy; sinus bradycardia; left ventricular dysfunction; myocardial infarction by history; essential hypertension; and obesity (20 CFR 404.1520(c) and 416.920(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As in any case that proceeds beyond Step 3, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). The ALJ found that, notwithstanding his impairments, Plaintiff retains the RFC to perform a reduced range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can occasionally climb stairs and ramps, but cannot climb ropes, ladders, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to temperature extremes, humidity, wetness, pulmonary irritants, and vibration. He cannot work at unprotected heights or around hazards, such as heavy equipment.

Decision, [DN 7] at 30.

At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). The ALJ made additional findings including that the claimant was born on July 17, 1985, and was 35 years old, which is defined as a younger individual age 18-49,

3

on the alleged disability onset date (20 CFR 404.1563 and 416.963); that claimant has a limited education (20 CFR 404.1564 and 416.964); and that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

At Step Five, the ALJ found that considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). Accordingly, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 25, 2020, through the date of his February 23, 2024, Decision (20 CFR 404.1520(g) and 416.920(g)).

## II. STANDARD OF REVIEW

The Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

4

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. The Court may look to any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir 2001).

Because Plaintiff filed his DIB and SSI claims in September of 2022, the new rules for weighing medical opinions apply. See 20 C.F.R. §§ 404.1520c, 416.920c ("For claims filed … on or after March 27, 2017, the rules in this section apply.") Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, ALJs will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(c)(5). However, the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(c)(2), 416.920c(c)(1)-(c)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

III. <u>DISCUSSION</u>

At his Hearing before the ALJ, Plaintiff testified that he was 38 years old, single with two children, and lived with his "old lady" Brenda. [DN 7] at 48. He testified to driving himself to doctor's appointments and the grocery store about twice a week with an unrestricted driver's license. [DN 7] at 49. He testified to prior work as a cook in a food trailer and as a welder doing MIG welding. [DN 7] at 52-3. He testified that he has an eighth-grade education, but that he cannot read or write. [DN 7] at 50. When further examined by his attorney on the issue of his education, Plaintiff indicated that he had been held back in school, had trouble reading and spelling, and is presently able to read "[J]ust small – like small words, you know." [DN 7] at 61-2. He is able to do simple math like addition and subtraction but was pulled out of class in school to receive extra help with reading and spelling. [DN 7] at 62-3. He indicated that he could write a note, "but it wouldn't be where you could read it . . . . [b]ecause of the spelling." [DN 7] at 63.

Plaintiff testified to the following physical conditions: problems breathing requiring use of two inhalers and a nebulizer four times a day, [DN 7] at 54-5; history of a heart attack with continuing chest pains daily and use of nitroglycerin twice a week, [DN 7] at 56-57; pain and difficulty walking due to gout in his foot, [DN 7] 57-8; treatment at a pain clinic for problems with his lower back causing numbness and pain down his right leg for which he takes pain medication and Neurontin, [DN 7] at 58-60; problems with his right wrist with swollen knuckles and joints, [DN 7] at 59; and recurrent hernias above and below his belly-button for which he will have surgery, [DN 7] at 60-1. He estimated that he could stand for 15-20 minutes and lift/carry about 5 pounds.[DN 7] at 61.

6

**Plaintiff's Arguments**. While Plaintiff's counsel enumerated five separate contested findings in the Fact and Law Summary [DN 7] at 1-2, Plaintiff's Memorandum assigns fault to the ALJ's Decision in two, very broad arguments: 1) the ALJ erred in finding that Plaintiff's low intellectual functioning was not a severe impairment, and that he had marginal education and was functionally illiterate, [DN 10] at 1; and 2) the ALJ erred in finding that the combination of Plaintiff's physical impairments were [not] disabling, [DN 10] at 5.

<u>PLAINTIFF'S FIRST ARGUMENT IS UNPERSUASIVE</u>.

**Step Two Findings**. Plaintiff argues that it was error for the ALJ to not find his low intellectual functioning a severe impairment at Step Two. At the outset, the Court notes that an ALJ's failure at Step Two to find a particular impairment to be severe generally does not constitute reversible error so long as the ALJ found that the claimant had other severe impairments and moved on to the other steps prescribed by the regulations. At Step Two, an ALJ determines whether one or more of a claimant's impairments singly or in combination are severe or "significantly limit" the claimant's mental or physical ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Two, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. See *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F.App'x 802, 803 (6th Cir. 2012). The Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found to be non-severe when other impairments have been found severe in order to clear the "threshold inquiry" of Step Two. *Anthony v. Comm'r of Soc. Sec.*, 266 F. App'x 451, 457 (6th Cir. 2008*); Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009). That is, the claimant's burden at Step Two is "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Where the ALJ determines that a claimant has at least one severe impairment at Step Two, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(e), 416.945(e)[3]; *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found that Plaintiff has eight severe impairments including degenerative disc disease of the lumbar spine, COPD, several heart-related conditions including history of myocardial infarction, high blood pressure, and obesity. [DN 7] at 25. The ALJ nonetheless considered Plaintiff's mental limitations under the paragraph B criteria, but found no limitations in any of the four functional areas. [DN 7] at 26-27. The undersigned finds no reversible error on the part of the ALJ at Step Two for failing to assign greater limitations in the paragraph B criteria or for failing to categorize Plaintiff's mental impairments as severe.

The second portion of Plaintiff's first argument is that the ALJ committed reversible error by not finding that Plaintiff had only marginal education and was functionally illiterate. [DN 10] at 1. Plaintiff faults the ALJ for failing to consider the low intellectual performance and functional

---

[3] (e) *Total limiting effects.* When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone; e.g., someone with a low back disorder may be fully capable of the physical demands consistent with those of sustained medium work activity, but another person with the same disorder, because of pain, may not be capable of more than the physical demands consistent with those of light work activity on a sustained basis. In assessing the total limiting effects of your impairment(s) and any related symptoms, we will consider all of the medical and nonmedical evidence.

illiteracy of the Plaintiff, for failing to obtain school records for the consultative examiner, and for otherwise failing "to develop the record regarding the illiteracy of [Plaintiff] and the effect it would have on his employment." [DN 13]. These arguments are unpersuasive for several reasons.

When evaluating a claimant's mental impairments at Steps Two and Three of the sequential evaluation process, the regulations require an ALJ to follow a special technique known as the psychiatric review technique ("PRT"). 20 C.F.R. §§ 404.1520a, 416.920a. After evaluating whether an individual has a medically determinable mental impairment, the regulations require an ALJ to rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: an individual's ability to understand, remember and apply information; interact with others; concentrate, persist and maintain pace; and adapt or manage oneself. Id. at §§ 404.1520a(b)-(c), 416.920a(b)-(c). These four areas are commonly referred to as the "paragraph B" criteria.

ALJ Stanley did consider Plaintiff's intellectual abilities and literacy when evaluating his abilities for understanding, remembering or applying information, the first domain of the paragraph B criteria. In finding that Plaintiff had no limitations in understanding, remembering or applying information, the ALJ considered all sources of related evidence in the administrative record. In reviewing **Plaintiff's testimony** from the hearing, the ALJ found as follows:

> The claimant testified that he could read just small words, he could write a note to his wife, but it probably could not be read because of the spelling, he could do simple math, he was held back in school, he was taken out of class to another room, where a teacher helped him with reading and spelling, and he has an eighth grade education. In a Disability Report -Adult, the claimant reported that he could not read and understand English, but he could speak and understand English and write more than his name in English.

In addition, the ALJ considered Plaintiff's **school records**, noting:

> The record contains school records through the eighth grade, but does not contain records of an IEP or formal intelligence testing scores during the claimant's school

years. The claimant's record show grades of C in reading, A in language Arts, and A+ in spelling in fourth grade, A in reading, C+ in language arts, and B+ in spelling in fifth grade, and F in reading, D in language arts, and B in spelling in sixth grade. According to these records, the claimant was retained in seventh grade. He was noted as being absent for 37.5 days in his first year of seventh grade and 46 days in his second year of seventh grade. The claimant failed English both years. The record shows a grade of 62 in English in the eighth grade and 93 in Voc. Tech. In addition, the claimant has skilled past work as a welder.

Next, the ALJ considered the **consultative examination report** of Timothy L. Baggs, Psy.D.:

On November 15, 2022, consultative examiner Timothy L. Baggs, Psy.D. administered the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV) and the Wide Range Achievement Test 4 (WRAT-4). The claimant reported that his literacy skills were not good and he dropped out of school in the eighth grade, but did not report special education. He indicated that he had a driver's license. On the WAIS-IV, the claimant received scores of 56 in verbal comprehension, 54 in perceptual reasoning, 55 in working memory, and 50 in processing speed and a full-scale IQ score of 48. On the WRAT-4, the claimant received grade equivalent scores of 1.1 in word reading and spelling. Dr. Baggs noted that the claimant's performance on the arithmetic subtest would suggest a problem in performing simple arithmetic, but the claimant was able to perform addition and subtraction calculations during the clinical interview. Dr. Baggs noted that the claimant's IQ and academic achievement testing might suggest functioning intellectually in the extremely low range and demonstrating poor literacy skills. Dr. Baggs noted that individuals functioning in the range the claimant tested would be readily identifiable by Dr. Baggs as a person demonstrating intellectual disability prior to any psychological testing, but the claimant did not present in this manner. Dr. Baggs noted that the claimant's demonstrated verbal skills and reasoning abilities would tend to suggest that the claimant was functioning at least in the borderline range, the claimant held employment, and observations did not suggest deficit in adaptive skills. Dr. Baggs noted that, during IQ testing, he perceived the claimant had not given good effort. Dr. Baggs opined that the poor performance on IQ testing also called into question whether Mr. Chumbley had given good effort during academic achievement testing. On mental status examination, the claimant was judged a good historian of his life. There was no suggestion of mental confusion or disorientation.

Finally, the ALJ noted that **treatment records from Casey County Family Practice** since the alleged onset date consistently show normal memory or do not indicate objective evidence of any impairment of significance in understanding, remembering or applying information. ALJ's Decision, [DN 7] at 26-27. The ALJ did not fail to consider Plaintiff's low intellectual functioning. To the extent that Plaintiff argues the ALJ failed to adequately develop the record by failing to

obtain additional educational records, the ultimate "burden lies with the claimant to prove that [he] is disabled. *Ferguson v. Comm'r*, 628 F.3d 269, 275 (6th Cir. 2010).

**ALJ's RFC Findings**. Plaintiff has failed to show any additional limitations attributable to his low-level intellectual functioning. The ALJ's determination of residual functional capacity in Plaintiff's case does not include any mental limitations. That exclusion from RFC is supported by substantial evidence. As noted above, Dr. Timothy Baggs, Psy.D. performed a consultative examination of Plaintiff. Dr. Baggs' report notes that Plaintiff indicated he was applying for disability for back and leg pain, and difficulty breathing. [DN 7] at 615. Plaintiff expressed that he sometimes experienced depression, but denied that anything was "wrong." [DN 7] at 617. With regard to his literacy skills, Plaintiff told Dr. Baggs they were "not good" but did not report special education[4] when asked. [[DN 7] at 616.

To Dr. Baggs, Plaintiff denied ever having undergone mental health treatment or hospitalization, or taking psychiatric medications. [DN 7] at 620. During Dr. Baggs' assessment,

---

[4] Plaintiff's brief mischaracterizes his hearing testimony, asserting, "Mr. Chumbley testified that he could not read and was placed in special education reading classes while he was in elementary school." However, there is no evidence supporting the claim that Plaintiff was in special education classes (or had an Individualized Education Plan). With regard to his education, Plaintiff testified as follows:

Atty:   And then I noticed also – of course, you've submitted your medical – I mean your school records, that you just went through the eighth grade. Were you held back in any of those grades when you were in elementary school?

A:   Yes.

Atty:   Okay. And you were talking about that you had trouble reading. Can you tell me what kind – of things you can read?

A:   Just small – like small words, you know.
      * * * * *

Atty:   Do you have any trouble with simple math, say as far as addition and subtraction or –

A:   No. No, I can do that. Oh, just like the reading and all of that stuff I have problems with, so.

Atty:   Okay. Was that always the way in school, that you had trouble with the reading?

A:   Yes.

Atty:   Okay. Did you go – you said something about special – did you go to special reading?

A:   Yeah, I was in – oh, they'd take me out of classes and would take me in another room, just me and then like a teacher and they would help me with my work, you know.

Atty:   Like with the reading?

A:   The reading, yeah -- and spelling and stuff.

[DN 7] at 61-63.

Plaintiff administered several tests and observed poor effort during the testing which called into question the validity of the test results. [DN 7] at 617-618. Dr. Baggs' opinion following assessment of Plaintiff was as follows:

> It was the opinion of the consultant Mr. Chumbley had no limitation in his ability to understand, remember, or carry out simple instructions. He seemed to have no apparent limitation in his ability to maintain sustained concentration and persistence in the completion of tasks in a normal amount of time. Observations would suggest no limitation in his ability to initiate and maintain social relationships. The claimant did not seem to demonstrate limitation in his ability to adapt and to respond effectively to pressures found in work settings based upon apparent psychological functioning.

Dr. Bagg's Report, [DN 7] at 620.

In addition, ALJ Stanley found the opinions of the state agency psychological consultants and Dr. Baggs to be persuasive. The state agency psychological consultants Jane Brake, Ph.D. and Evelyn Adamo, Ph.D. found no medically determinable mental impairment supported in the record. The ALJ found their opinions persuasive because:

> Dr. Brake and Dr. Adamo have program knowledge and supported their findings with explanations, such as no IEP data and lack of psychiatric findings on examinations (Exc. 2A; 6A). The undersigned found a medically determinable impairment of anxiety based on primary care records showing Valium prescribed for anxiety. However, the evidence of record, including lack of mental health treatment since the alleged onset date and records from Case [sic] County Family Practice since the alleged onset date indicating normal mental examination findings, supports a finding of no severe mental impairment (e.g., Exs. 1F, 3F, 14F).

ALJ Decision, [DN 7] at 35.

In finding Dr. Baggs opinion persuasive, the ALJ noted that his findings of no limitations in the four domains of functioning supported by explanations and consistent with the record as a whole:

> Dr. Baggs has program knowledge and supported his findings with explanations, such as concern as to whether the claimant had given good effort during testing, demonstrated ability to perform simple math computation, and the claimant not presenting as experiencing significant problems in coping (Ex. 6F). The opinion of Dr. Baggs is consistent with the record as a whole, such as records from Case [sic]

12

County Family Practice since the alleged onset date indicating normal mental examination findings (e.g., Exs. 1F; 3F; 6F; 14F).

ALJ Decision, [DN 7] at 35.

When reviewing the ALJ's Decision as a whole, the undersigned finds that he properly considered Plaintiff's alleged low intellectual functioning and reasonably concluded that it warranted no mental restrictions in the RFC. As for the allegation that the ALJ erred in failing to obtain additional educational records "to see if they were consistent with [Dr. Baggs'] examination," the Court finds that this one-sentence argument is undeveloped and unsupported by Dr. Baggs' report.

**Step Five Findings**. The ALJ's unfavorable Decision in Plaintiff's case was a Step Five determination. Plaintiff challenges the ALJ's determination at this step of the sequential evaluation process, arguing that the ALJ erred in concluding that Plaintiff's education level is limited, instead of finding him to be "marginally educated" or "illiterate." The Court finds that the ALJ correctly applied the regulations in finding that Plaintiff has a "limited education," and that substantial evidence of record supports that determination. In addition, the Court finds that the ALJ's assignment of education level in this case is irrelevant, as even an assignment of illiteracy would not have directed a finding of disability in this case under Grid Rule 202.18.

Unlike the first four steps of the sequential evaluation process, it is the Commissioner who bears the burden of proof at Step Five. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). At this step, the ALJ must decide whether the claimant, considering the claimant's age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g); 416.920(g). To improve the uniformity and efficiency of this determination, the Social Security Administration created the Medical-Vocational Guidelines or "Grid Rules." When an ALJ's findings concerning a claimant's age, education,

previous work experience and residual functional capacity coincide with all of the criteria of a particular Grid Rule within the medical-vocational guidelines, the ALJ may rely on that Grid Rule to satisfy his burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; *Born v. Sec'y of HHS*, 923 F.2d 1168, 1174 (6th Cir. 1990). However, if the ALJ's findings do not coincide with all the criteria then the ALJ is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e); *Born*, 923 F.2d at 1174.

ALJ Stanley utilized Grid Rule 202.18 as a framework for decision-making in this case. Plaintiff was 35 years old on his alleged onset date, and he is considered a "younger individual" for purposes of the regulations. His contention that he would have been found disabled had the ALJ properly categorized his educational level is simply wrong. That is, under Table 2 of the Grid Rules, Plaintiff would be found "not disabled" even if he had been found to be illiterate given his "younger individual" age category:

> While illiteracy may significantly limit an individual's vocational scope, the primary work functions in most unskilled occupations relate to working with things (rather than data or people). In these work functions, education has the least significance. Similarly, the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49), even if they are illiterate.

Grid Rules 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(g).

The Social Security regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 416.964(b)(1). "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id.* Whether a claimant is

14

literate is a question of his educational level. Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. 20 C.F.R. §§ 404.1564(a) and 416.964(a). The regulations define levels of education as illiteracy, marginal education, limited education, high school education and above, and the inability to communicate in English. 20 C.F.R. §§ 404.1564(b) and 416.964(b). "The essential question is whether [plaintiff] is so deficient in ability to read and write that he cannot obtain even an unskilled job." *Smith v. Comm'r of Soc. Sec.*, No. 13-12759, 2015 WL 899207, at *23 (E.D. Mich. Mar. 3, 2015) (alteration in original) (quotation marks and citation omitted).

Plaintiff takes issue with the ALJ's finding that he has a limited education, arguing that he has marginal education and is functionally illiterate. A "limited education" is defined as an "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3). In evaluating educational levels, the regulations recognize that the "numerical grade level that you completed in school may not represent your actual educational abilities' which 'may be higher or lower." 20 C.F.R. §§ 404.1564(b) and 416.94(b). Only where "there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." *Id*.

As discussed above, substantial evidence supports the ALJ's finding that Plaintiff has a "limited education." The ALJ properly considered Plaintiff's education records, noting that the school records do not contain evidence of an IEP or formal intelligence testing scores. [DN 7] at 26. The ALJ found it noteworthy that the school records reflected As, Bs, and Cs in elementary

reading, language arts, and spelling, DN 7 at 26. The ALJ also properly considered Plaintiff's testimony that he could read small words and could write a note to his wife, but it probably could not be read because of the spelling. *Id*. The ALJ also considered Plaintiff's testimony that he can do simple math, was held back in school, he was taken out of class to another room where a teacher helped him with reading and spelling, and he has an eighth-grade education. *Id*. Furthermore, any error in the ALJ's assignment of educational level is irrelevant, as it would not change the outcome of this case under Grid Rule 202.18. As aptly noted by the Commissioner, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result," *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 507 (6th Cir. 2006).

<u>PLAINTIFF'S SECOND ARGUMENT IS UNPERSUASIVE</u>.

The second numbered argument in the Memorandum Brief in Support of Plaintiff's Fact and Law Summary is that the ALJ erred in finding that the combination of Plaintiff's physical impairments were [not] disabling. [DN 10] at 5. Plaintiff recites the medical evidence concerning his treatment for his back condition, breathing problems, and a recent heart attack with continuing chest pains and opines that when "properly taken in combination, [Plaintiff]'s back, breathing, and heart conditions would prevent him from engaging in substantial gainful activity. When his limited educational functioning (functional illiteracy) is also taken into consideration, there would be no employment for [Plaintiff]." *Id*.

A claimant's residual functional capacity (RFC) is assessed between Steps Three and Four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(4); 404.1520(e). RFC is the most a claimant can do despite his limitations. *Id*. The Social Security regulations do not require that an ALJ's RFC findings be based upon any

16

specific physician findings: the RFC determination is the ALJ's ultimate determination of what the claimant can still do despite her physical limitations, and the finding is based upon consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. § 404.1529, 404.1545(a)(3), and 404.1546(c). That is, the RFC is the exclusive province of the ALJ who at the time of his review, had access to the entire record.

The claimant bears the burden of proof in Steps One through Four. *Walters*, 127 F.3d 529. At the Fifth Step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In the present case, ALJ Stanley found Plaintiff retained the ability to perform a limited range of light work with additional postural and environmental limitations. [DN 7] at 30. Of the seventeen-page Decision, the ALJ includes seven pages of review of the medical and other evidence in the record supporting his RFC findings. Plaintiff bears the burden of proving a more restrictive RFC than that found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms.

Notably, plaintiff points to no treating source opinion that assesses greater limitations than those found by the ALJ in assessing his RFC. The ALJ's Decision reflects that he weighed the evidence before him—medical opinions, prior administrative medical findings, and objective medical evidence—and assessed Plaintiff's RFC based upon the record as a whole. ALJ's are tasked with weighing medical opinions before them based upon their supportability and

17

consistency. 20 C.F.R. §§ 404.1520c, 416.920c. Ultimately, the ALJ found both the state agency medical consultant and examiner opinions to be supportive of Plaintiff retaining the ability to perform a range of light work with postural and environmental limitations. Plaintiff was seen for a consultative exam by Dr. Nicholas St. Germain in December of 2022. [DN 7] at 668-678. After physical examination (and a failed pulmonary function study) revealing no limits to Plaintiff's range of motion and normal grip strength, Dr. St. Germain opined that Plaintiff "is not limited in their ability to sit, stand, or ambulate. They are not limited in their ability to perform fine motor tasks. The patient can perform all activities of daily living unassisted." State agency medical consultant Dr. Rebecca Luking reviewed Plaintiff's medical records along with Dr. St. Germain's examination results and concluded that Plaintiff remained capable of performing light exertional work, lifting 20 pounds occasionally, lifting 10 pounds frequently, sitting six hours in an eight-hour workday, and standing or walking six hours in an eight-hour workday. [DN 7] at 77-79. Giving Plaintiff the benefits of the doubt, she assigned postural and environmental limitations [DN 7] at 86, which were later upheld on reconsideration by state agency medical consultant Dr. Saranga.[DN 7] at 97.

The ALJ found the opinions of Drs. Luking, Saranga, and St. Germain to be persuasive, outlining the medical records they used to support their findings and how their opinions were consistent with the record as a whole. [DN 7] at 35-36. Notably, in light of the persuasive opinion of Dr. St. Germain assigning no limitations, the ALJ credited Plaintiff with greater limitations:

> However, the undersigned finds that limiting the claimant to less than a full range of light work, as detailed in the residual functional capacity in this decision, is more consistent with the record as a whole, such as MRI records of the claimant's lumbar spine, abnormal electrocardiogram findings on July 6, 2023, but normal pulmonary effort and breath sounds, Vitality Pain Care records showing an antalgic gait pitched forward and positive straight leg raising on the right, but no indication of use of an assistive device for ambulation and other medical records indicating no gait abnormality, no acute pulmonary abnormality on radiographic imaging of the

claimant's chest on June 5, 2023, and Ms. Epperson's records from November 14, 2023 showing grossly clear pulmonary findings (Exs. 4/F9-10; 9F, 14F, 15F, 16F; 18F).

ALJ Decision, [DN 7] at 36.

Having reviewed the medical and other evidence, particularly the facts and sources relied upon by the ALJ in formulating the RFC, the undersigned finds that the ALJ's Decision stands solidly on substantial evidence. The new regulations require the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), and "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020). In this case, the undersigned finds that ALJ's Decision articulates "an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

## IV.  CONCLUSION

Regardless of how this Court may view the evidence, it is not this Court's place to retry or reevaluate the findings of the ALJ. 42 U.S.C. § 405(g). "As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported the opposite conclusion …" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up). The job of this Court is to determine whether substantial evidence exists to support the ALJ's Decision and if the ALJ followed the applicable law. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial

evidence in the administrative record and correctly followed the applicable law. Accordingly, Plaintiff is not entitled to relief.

June 30, 2026

**Lanny King, Magistrate Judge**
**United States District Court**